Good morning. May it please the court. Wendy Overmeyer for the defendant Leon Benzer and I'll reserve three minutes for rebuttal. Thank you. And today we're here to address the erroneous facts that require reversal of the high-end sentence imposed on remand. And despite this court's prior remand, Benzer has not yet received a sentencing based on correct facts. And there are two main concerns. The first is the district court's erroneous beliefs about what happened during the previous proceedings that kind of persisted throughout this resentencing proceedings. You're talking about him saying that there was a trial? There was – that was partially it. But more concerning was that when the court imposed sentences, it says, well, I imposed a high-end before, and so that's appropriate here. I'm going to impose a high-end now. And that was not true. And the defense corrected the court after imposition of sentence, but yet the court didn't correct that misstatement or explain why a high-end sentence would be warranted now when it wasn't imposed before, because before, in fact, a low-end sentence was imposed. And in part, based on the fact that Benzer had pled, that was a large factor that went towards the low-end sentence before, because Benzer pled to all charges early on, saving the government and the court time. So because the sentence was directly tied to that erroneous fact that I gave a high-end before, so I'm going to give a high-end now, this court requires reversal when, again, the sentence is demonstrably based on an erroneous fact. But the judge acknowledged that mistake right afterwards, right? I mean, looking at the transcript here, I don't know if it was you or some other counsel, you point out the error, and then the judge says, I'm sorry then, so I apologize. So it seems like the judge has acknowledged that error, and then the judge then says, well, then I did depart upward. I mean, isn't a reasonable reading of when he says, I did depart upward, he's not talking about the sentencing guidelines that he's departing upwards. He's saying, well, I acknowledge the mistake I made, but I'm sentencing Mr. Benzer to the higher end. Isn't that the most reasonable reading of it since he acknowledged the error he made? Well, he did acknowledge the error and then did say, I depart upward. And that, again, that is not clear what the Court meant from that statement, because a departure, you know, is a specific, a very specific procedure that's based on the guidelines. I mean, it's a term of art, but I think a fair reading of the transcript is the judge felt that a high-end sentence was justified by the facts. If we don't think your procedural irregularity arguments warrant reversal, why isn't the fact that under the applicable guidelines, which both you and the government agree weren't used, that under the applicable guidelines, it wouldn't matter whether the loss took into account the services that you say your client should have been credited with? Because the, and we did agree that the 2014 guidelines do apply, but there is still this loss-finding dispute of $5 million, which is a 40% difference as to loss. So that's a considerable amount when considering the totality of the circumstances. So your argument is that if you're right on this, even if the guideline range would have been the same, the judge might have given your client a lesser sentence if he had found that the loss was less? Yes, that's correct. Yes. So on that issue, I mean, on the merits of that issue, I have a hard time seeing how services rendered by conspirators for their own ends, where it may provide some collateral benefit to your clients, have any value when you're looking at it in a realistic economic way. Why services rendered by crooks for the purpose of advancing a criminal purpose have any value at all when taking a realistic economic view of them? That's the offset rule of the guidelines, which is the same under 2014 and 2016, at note 3E1, that contemplates that services rendered even by a defendant or conspirators in a conspiracy still can have market value. But I think the cases that you cite talk about actual legitimate services as opposed to cases where the services themselves are driven by the fraud and that for lawyers rendering them, they're doing it. Every act they take is a breach of fiduciary duty. Do you have a case that deals with a circumstance like this one? I could not find one. And the trial court found that the services rendered on page 10 of the transcript, they weren't legitimate. I mean, you made a clear finding. Yes, the district court did. And our argument is I'd like to compare it to the Strickland standard. So in ineffective assistance claims, there's two prongs. First, was there ineffective assistance, you know, was some kind of duty violated and that? And then there's a second prong. Was there actual prejudice from that performance? And so here, there's no dispute that the attorneys, you know, they pled guilty, they were part of this conspiracy. But was there actual monetary pecuniary harm suffered by Vistana from their actions? And the answer is no when you look at it clinically. Because for Nancy Kwan, she handled the construction defect suit that was a legitimate suit. It had to be filed because the condos were unlivable. And so Vistana would have had that suit regardless of who filed it. And she was successful in what the government called. What did she really do to warrant her multi-million dollar fee? Well, she settled for $19 million, which was sufficient. What did she do to get there? She submitted billing. No, I mean, substantive legal work. We don't have her itemized building and of course she wasn't available to be a witness. But there was a sergeant that testified on behalf of the government that the typical, the average contingency fee is around 30% for these types of cases. So any attorney would have paid that. I kind of look at it as if this were somebody, say, who were going to be suing under some sort of quantum Marriott theory. That here's the value of my services and you should disregard the fact that I was part of a conspiracy for my own purposes. I just can't see any court ever saying those services have value, so I'm going to award you the attorney money as part of the services you supposedly rendered, which are a part of this total fraudulent scheme. I just can't see a court ever saying the lawyers would have been entitled to any money. And if that's the case, I don't see how your client's entitled to an offset. Well, I can't say what the civil remedy would be, either for the victim or the attorneys in this case. But the guidelines, the commission chose to include services rendered by conspirators. Now the guidelines could have chose not to include that, said anyone involved in a conspiracy could never give valuable service. But there still has to be a fair market value of the actual services, right? Yes, which was the, you know, the contingency fee for these type of construction defect lawsuits. The standard would have paid the same contingency fee, no matter who represented them, in the successful suit. And so government witnesses says that contingency was within the average. And then the government brought in Jan Brussel, who was an independent evaluator, who said the 19 million settlement was sufficient. And she advised Vistana that, yes, this 19 million settlement is deficient. So here the fraud, while it attained a contract fraudulently, it performed that contract. The attorneys performed that contract. And so that's why there's no monetary loss, because the theft aspect of the conspiracy was for the construction repairs, which Bender has conceded that, you know, any money that he received that he didn't go towards contract. But this is towards, you know, the attorney's contracts that were performed that should be, should offset loss. Did you want to reserve your time? Yes. And we'll give you another minute again. Thank you. Good morning, Your Honors, and may it please the Court. Francesco Valentini for the United States. The briefing in this case has significantly narrowed the issues before the court on appeal. In its opening brief, Benzer's primary claim was that the district court misapplied the loss enhancement and erred by applying a 20-level loss enhancement and miscalculated the applicable guidelines range. It is now undisputed that a 20-level loss enhancement applies and that the guidelines range was correctly computed. For that reason alone, the court does not need to reach the merits of the dispute with respect to loss. Well, I, you know, although I understand your argument, I mean, I have a hard time agreeing with it because, I mean, the government told the judge what the right guidelines supposedly were or the PSR did. Everybody was under the impression that it was a particular guideline level. It turned out everybody was wrong. People make mistakes. But why isn't your colleague's argument that irrespective of which guidelines there were, if the judge had found the loss was $5 million less, he might still, even under the correct guidelines, have imposed a lesser sentence? Why is it, if we agree with her on the merits, why isn't that right to give the judge a chance with the correct loss amount to reimpose this, to have another shot at sentencing? Well, two reasons. I want to get to the merits of that argument in a second, and the merits were discussed below. And we think that the district court did not error in the first place. And for that reason alone, affirmance will be in order. But as a procedural matter, on a different record, it might be possible that a district court might have taken a factual difference in the loss amount into account with respect to the 3553A sentencing factors. But in this case, the record is crystal clear that the court only considered loss insofar as it affected the applicable guidelines range. At page 35 of the excerpts of record, the government at some point did perform a vistan and whether Benzor should be entitled to a credit for those repairs. And the court was crystal clear and said, I don't want to get bogged down in that dispute. And that was a 2.5, approximately, 2.4 to 2.5 million dollar dispute because it did not affect the sentencing range. So in this case, we have proof positive that the court did not care what the loss amount was, except to the important extent to which it affected the guidelines range. Now, it is disputed that they did not, in fact, affect the guidelines range. And for that reason alone, the fact that there's no longer a dispute about the guidelines range suffices for a foreman. I do want to touch on the merits of the loss claim. As the discussion just a minute ago, I think, suggested, the question there, too, is narrow. It's what was the fair market value of these services, purported legal services, the Benzor co-conspirators rendered? And that question, too, I think is straightforward. The answer is those illegitimate legal services had zero fair market value. And that flows directly from basic ethics principle, the duty of loyalty, which is critical to the attorney-client relationship. And in this case, those services were not just procured through fraud. It's not an exception, given that we believe should be enough in the context of legal services. But they were also rendered in a fraudulent way. Throughout these retentions, the attorneys were out to defraud their own clients. And for that reason alone, and as the discussion before suggested, we think that the fair market value of those services should be zero. How do you reconcile that with our Court's Ruttgard decision, which involved medical services, and the Ninth Circuit reversed the district court and said you can still tease out between legitimate medical services versus non-legitimate and reversed the district court because the district court just used a bag, was permeated with fraud, and discounted all of the medical services provided? Right. That's because we think there's a distinction there. And I think we think this case is much more like the United States versus Blitz case that we cite in our briefing. Because medical services do not—in those cases, the services may have been induced on a fraudulent basis, but they were not rendered in a fraudulent way. The point was not to defraud the customer, or in that case the patient, in the rendition of the services. In this case, the services were rendered to defraud the clients, the homeowner associations. And for that reason, the much more similar case is United States versus Blitz, where the Court found, as in this case before, found that the services were illegitimate from beginning to end. And for that reason, and because of the core nature, the core importance of the duty of loyalty to the attorney-client relationship, we think that the medical services cases, where the medical services were rendered, are entirely distinguishable. Those cases are more similar, perhaps, to the repairs that in this case were credited back. There were physical repairs that were made, some, not many, but some, to the Vistana HOA. And for those repairs, the Court rendered an offset. I recognize the duty of loyalty, but the attorney, Ms. Kwan, did obtain a $19 million settlement. It wasn't for $400,000, $500,000. Isn't there at least some value to that? Isn't there, just in a practical point of view, setting aside the ethical issues? Right. And that's, I think, what is particularly devious and illegitimate about hijacking an attorney-client relationship. We don't know what the settlement would have been if the relationship had been a loyal one. We don't know about the timing of the settlement. We know, for instance, that this conspiracy was in constant need of funds, because they needed funds to set up new straw purchasers, to buy new condos, so that it could perpetuate the conspiracy. So did that factor into the which this fundamental breach of the duty of loyalty leaves unanswered and unanswerable. My opposing counsel also touched, unless Your Honors have any further questions about the last question, the last issue, my opposing counsel also, and my friend on the other side, touched on the alleged factual slip-ups at the court. Slip-ups, as Judge Lee noted before, was corrected. And because of that, that's precisely how the system is supposed to work. An objection was interposed. A correction was made by defense counsel, in one case, I think, by the probation officer. And the district court acknowledged its slip-up, and it moved on and explained that that did not affect the sentence, and that the sentence will not be affected. And for that reason, we don't think there's any to reverse on that ground. Unless Your Honors have any further questions about substantive reasonableness or any other aspect of the case, we would request that the court affirm the judgment. Thank you. Thank you, Your Honors. So at resentencing, the aggravating factors all went down in favor of Benzer. The government came down from, you know, a $60 million loss to $12 million loss. And the $5 million dispute would take it down even further to the low, the very low threshold of the enhancement. So that could have a reasonable probability of resulting in a lower sentence. And it's the commission's decision, again, that conspirator services can have value. That's the choice the commission made. So when looking at this from that kind of clinical, objective stance, the attorneys, did they obtain the contracts fraudulently? Yes. But they intended to perform those contracts. And so that's what Quan did. She obtained the contract, albeit fraudulently, but she performed the contract. She litigated the lawsuit. She took slightly less than the average contingency fee, which Vistana would have paid to any law firm handling the lawsuit. And the government's own witnesses — That whole arrangement might have been a scam, too. It could have been a much better lawsuit than that. And it was like shooting fish in a barrel. She didn't have to do anything. That's why I was curious about what she really did. Was she anybody that was even really capable of taking on a big construction lawsuit? Probably not. She was the leading construction defect expert in Las Vegas at the time. She actually had a television show about construction defect, and she was considered one of the leading attorneys in this area. And unfortunately, she passed before the indictment in this case. But the government's own expert, and again, an independent expert, said the $19 million was sufficient for these repairs. So that was a valuable legal services for this $19 million and should have been — I'm sorry, for the attorneys' fees and should have been credited. And so what Benzer seeks is, again, a sentencing based on correct facts, correct facts as to what happened previously. And we ask this Court to vacate the high-end sentence here that is possibly based on a misapprehension of what happens procedurally, and also for this Court to clarify the loss amount and remand for ensure proper 3553 analysis. Thank you, counsel. The case just argued will be submitted.
judges: Bennett, Lee, Piersol